Robert P. Goe - State Bar No. 137019
Elizabeth A. LaRocque – State Bar No. 219977
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 510
Irvine, CA 92612
rgoe@goeforlaw.com
elarocque@goeforlaw.com
Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Attorneys for Buyer, VA Property Group, LLC or assignee

Jeffrey S. Benice – State Bar No. 81583
LAW OFFICES OF JEFFREY S. BENICE
3080 Bristol Street, Suite 630
Costa Mesa, CA 92626
JSB@JeffreyBenice.com
Telephone: (714) 641-3600
Facsimile: (714) 641-3604

Attorneys for Debtor and Debtor-in-Possession
Carson Valley, LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| IN RE:<br><br>**CARSON VALLEY, LLC, a California limited liability corporation,**<br><br>       Debtor and Debtor-in-Possession | CASE NO. 8:10-bk-24665-TA<br><br>CHAPTER 11<br>**DEBTOR AND DEBTOR-IN-POSSESSION'S NOTICE OF MOTION AND MOTION FOR ORDER APPROVING:**<br>**(1) SALE OF REAL PROPERTY (14.33 acre parcel of land, Carson, CA, Los Angeles County APN 7336003030) FREE AND CLEAR OF CLAIMS, LIENS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO 11 U.S.C. SECTION 363 (b), (f) AND (m);**<br>**(2) COMPENSATION OF SELLER'S AGENT; AND**<br>**(3) DISTRIBUTION OF SALE PROCEEDS;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAN J. HARKEY IN SUPPORT THEREOF**<br><br>**Hearing Date:**<br>DATE:     June 22, 2011<br>TIME:     10:00 a.m.<br>CTRM:    5B |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR, AND PARTIES IN INTEREST:**

Debtor and Debtor-in-Possession, CARSON VALLEY, LLC, a California limited liability corporation (hereinafter "Debtor"), hereby respectfully moves the Court for an Order approving the sale of the estate's interest in certain real property, 14.33 acre parcel, located in the City of Carson, California 90745 (the "Property") free and clear of claims, liens, encumbrances and other interests pursuant to 11 U.S.C. Section 363(b), (f) and (m); the compensation of the Seller's Real Estate Agent; and distribution of sale proceeds ("Motion").

**NOTICE IS FURTHER GIVEN that any opposition to the Motion must be served upon counsel for the Debtor at the address indicated above, and on any other parties entitled to service thereof, at least fourteen (14) days before the date set for the hearing on the Motion and filed with the Court as required by Local Bankruptcy Rule 9013-1(1)(a)(7). Any opposition not filed and served as set forth herein may be deemed waived.**

<u>**SUMMARY**</u>

1.      Based on the Debtor's analysis of the estate's interest in and fair market value of the Property, and subject to Court approval and overbid, the Debtor has accepted the bid of VA Property Group, LLC, or assignee ("Buyer")[1] for $2,000,000, to purchase the Property.  A true and correct copy of the proposed Real Estate Purchase and Sale Agreement and Joint Escrow Instructions is attached as **<u>Exhibit "1"</u>** to the Declaration of Dan J. Harkey ("Harkey Declaration") and incorporated herein by this reference.

2.      There is one (1) lien that appears against the Property, which is the secured claim filed by the Los Angeles County Treasurer and Tax Collector ("L.A. County Lien") in the amount of $1,456,889.60 and is reflected in the Proof of Claim filed in this case.  A true and

---

[1] For full disclosure, Buyer's counsel will also be a principal of the Buyer and represents Debtor's managing member, Point Center Financial, Inc. ("PCF") and its investors in matters unrelated to this bankruptcy proceeding.

1  correct copy of the L.A. County Proof of Claim is attached as **Exhibit "2"** to the Harkey

2  Declaration.

3       3.     Although not on title, Debtor and Buyer will be providing notice to various other

4  parties who could attempt to assert disputed claims, liens, encumbrances, or interest which this

5  sale shall be free and clear of.

6  **BACKGROUND INFORMATION**

7       4.     This bankruptcy proceeding was filed October 15, 2010, by the filing of a

8  voluntary Chapter 11 petition (the "Petition Date").

9  **THE PROPERTY TO BE SOLD AND CLAIMS**

10       5.     The Property is approximately 14.33 acres of raw land in Carson, California,

11  formerly used as a dump and subject to the following recorded liens:

12  | Property Taxes | Amount Owed |
13  | L.A. County Treasurer and Tax Collector | $1,456,889.60 (Claim #1) |

14       6.     There are other potential alleged claims against the Property, namely by Ronald E.

15  Snow, trustee of the Ronald E. Snow Trust and Independent Electric Supply, Inc., a California

16  corporation, claiming a water nuisance issues, and the Department of Toxic Substances Control

17  and other governmental agencies for clean-up costs, though to date Debtor has not received any

18  written notice of any pending actions, suits, arbitrations, claims or proceedings, at law, in equity

19  or otherwise affecting, or which may affect, all or any portion of the Property and Buyer will take

20  free and clear of, among others, the alleged claims set forth in this paragraph.  L.A. County may

21  have also tried to assess additional property taxes, which are not included in the L.A. County

22  Proof of Claim.

23       7.     Watt/Walder Limited Partnership ("Watt"), a California limited partnership,

24  Lessor, filed a Notice of Non-Responsibility on July 7, 1992, regarding its lessee's, L.A. Cellular

25  Telephone Company, installation of a cell tower on Debtor's Property.

26  **PROPOSED SALE OF THE PROPERTY**

27       8.     Contingent upon, among other things, Court approval, Debtor intends to sell the

28  Property for $2 million to Buyer.  The terms of the sale are as follows:

(1)     The estate's interest in the Property shall be purchased for $2 million;

(2)     The purchase prices of $2 million will be paid in full through escrow;

(3)     The sale is made "as is, where is" without representation or warranty;

(4)     The sale shall be free and clear of all claims, liens, encumbrances and other interests against the Property; and

(5)     The sale will be subject to the Seller's representative's commission of 5% of the sale price to be paid to PCF which Debtor will pay from escrow only if Buyer closes on the Property on the Closing Date.

9.     Buyer is not related to anyone connected with the Debtor (other than as set forth above concerning Mr. Goe) and is a good faith purchaser as provided for in Bankruptcy Code Section 363(m).

10.     Fair market value for the Property is being realized.

<u>**PROPOSED DISTRIBUTION OF SALE PROCEEDS**</u>

11.     The Debtor seeks authority for the distribution of sale proceeds as follows:

     a.  For normal closing costs.

     b.  For any unpaid property taxes.

     c.  All remaining funds to be paid to the Debtor for distribution as provided by the Bankruptcy Code priority scheme.

<u>**BENEFIT TO THE ESTATE**</u>

**WHEREFORE**, the Debtor requests that the Court enter an Order:

1.     Approving the sale of the Property to Buyer as proposed herein free and clear of all liens, claims and interest;

2.     Approving the $100,000 compensation of the Seller's agent PCF only in the event Buyer closes on the Property;

3.     Authorizing the Debtor to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale to the highest qualified bidder without further notice, hearing or Court order; and

/ / /

1      4.     For such further and other orders as the Court deems just and proper.

2  Dated: May 31, 2011                Respectfully submitted:

3                         LAW OFFICES OF JEFFREY S. BENICE

5                       By: _____

6                          Jeffrey S. Benice, Attorneys for Debtor

8  Dated: May 31, 2011        GOE & FORSYTHE, LLP

9                    By: /s/Robert P. Goe

10                    Robert P. Goe

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **THE COURT MAY AUTHORIZE THE SALE OF PROPERTY WHEN THERE IS**
     **A GOOD FAITH PURCHASER AND SOUND BUSINESS PURPOSE**

Under 11 U.S.C. §363, a trustee is empowered to sell assets of the estate "after notice and a hearing."  The standards for approval of a sale under §363(b)(1) require that the proponent of the sale establish that:  (1) a "sound business purpose justifies the sale"; (2) "accurate and reasonable notice" of the sale was provided; (3) the "price to be paid is adequate, i.e., fair and reasonable"; and (4) "good faith, i.e., the absence of any lucrative deals with insiders, is present."  See, In re Industrial Valley Refrig. & Air Cond. Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D.Pa. 1987).  The proposed sale of the Property conforms with each of these requirements.  The Buyer does not have any interest in the Debtor or estate other than as discussed above.

The Ninth Circuit in In re Walter, 83 B.R. 14 (Bankr. 9th Cir. 1988) has adopted a flexible, case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under §363(b).  In Walter, the Ninth Circuit, adopting the reasoning of the Fifth Circuit in In re Continental Air Lines, Inc., 780 F.2d 1223 (5th Cir. 1986), and the Second Circuit in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), set forth the following standard to be applied under 11 U.S.C. §363(b):

> Whether the proffered business justification is sufficient
> depends on the case.  As the Second Circuit held in Lionel, the
> Bankruptcy judge should consider all salient factors pertaining
> to the proceeding and, accordingly, act to further the diverse
> interests of the Debtor, creditors and equity holders, alike.  He
> might, for example, look to such relevant factors as the
> proportionate value of the assets to the estate as a whole, the
> amount of lapsed time since the filing, the likelihood that a plan
> of reorganization will be proposed and confirmed in the near
> future, the affect of the proposed disposition on future plans of
> reorganization, the proceeds to be obtained from the disposition
> vis-a-vis any appraisals of the property, which of the

1       alternatives of use, sale or lease the proposal envisions and,

2       most importantly perhaps, whether the asset is increasing or

3       decreasing in value.  This list is not intended to be exclusive,

4       but merely to provide guidance to the Bankruptcy judge.

5   Walter, supra, at 19-20 quoting, In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir.

6   1986).

7       As discussed below, the proposed sale of the Property conforms with each of the above-

8   referenced requirements:

9       1.      There is a sound business purpose in that the sale of the Property will allow

10  liquidation of the most significant estate asset for the benefit of the estate and its creditors,

11  allowing Debtor to fund a plan of reorganization (or pay creditors with allowed claims in full and

12  dismiss the case).

13      2.      Notice of Buyer's bid is being provided to all creditors or alleged creditors.

14      3.      Debtor believes the Buyer's bid represents the best purchase price that can be

15  expected by the estate.

16      4.      As is shown by the Harkey Declaration, the Debtor believes that the sale

17  price is reasonable and fair and that the proposed sale is in the best interests of the estate and its

18  creditors.  Thus, the sale is in good faith.

**II.      THE BUYER SHOULD BE AFFORDED THE PROTECTIONS OF**

**BANKRUPTCY CODE SECTION 363(m)**

20      Other than as set forth above, Buyer has no connection with the Debtor and is not owed

21  any money by the Debtor.  The purchase of the Property is being done as an arms length

22  transaction.  Buyer is paying a fair price for the Property.  Accordingly, the Court should find that

23  the Buyer in is a "good faith" purchaser within the meaning of Code Section 363(m).

**III.      THE PROPERTY CAN BE SOLD FREE AND CLEAR OF LIENS**

25      11 U.S.C. Section 363(f) provides as follows:

26      "The trustee may sell property under subsection (b) or (c) of this section

27      free and clear of any interest in such property of an entity other than the estate,

28      only if -

7

(1) applicable non-bankruptcy law permits sale of such property

free and clear of such interests;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to

be sold is greater than the aggregate value of all liens on such

property;

(4) such interest is in a bona fide dispute;

(5) such entity could be compelled, in a legal or equitable

proceeding, to accept a money satisfaction of such interest."

The Motion seeks approval to sell, transfer, and convey (the "Sale") the Property to Buyer on an "as is, where is" basis, without any warranties either expressed or implied, free and clear of all liens (including tax liens and any statutory or common law liens, possessory or otherwise), charges, claims (from governmental agencies or any other parties), pledges, rights of ownership, rights of recoupment, rights of offset, rights of setoff, security interests, conditional sale agreements or other title retention agreements, leases, rights of possession, claims of possession, entitlements of possession, leasehold estates, mortgages, options, encumbrance, or other interests (collectively, "Lien, Claim, Encumbrance, and Other Interest" or "Liens, Claims, Encumbrances, and Other Interests" as the context dictates), and any monetary amounts which are secured by any Liens, Claims, Encumbrances, and Other Interests, pursuant to Section 363(f) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure Rule 6004. Moreover, except to the extent the terms of the Agreement are inconsistent with the terms of the Proposed Sale Order ("Sale Order"), the Sale of the Property shall be performed in accordance with the Agreement.

Pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, except with respect to the L.A. Angeles County Lien for $1,456,889.60 which shall be paid in full from escrow, effective upon closing of the Sale, the Debtor's and the Estate's right, title, and interest to the Property shall be conveyed, transferred, and assigned to Buyer free and clear of all Liens, Claims, Encumbrances, and Other Interests of any kind or nature whatsoever including, but not limited to: (i) all the Recorded Encumbrances (other than the L.A. Angeles County Lien for $1,456,889.60 which shall be paid in full from escrow; (ii) any recorded or unrecorded leases for any portion of

the Property; (iii) any right, claim, or entitlement to possession of the Property or any portion thereof; (iv) any and all unrecorded tax or environmental claims of any kind from any governmental agency, private party or any entity; and (v) any right of recoupment, offset, or setoff held by any person or entity, including any present tenant or purported tenant of the Property, all creditors of the Debtor and the Estate, and all parties in interest in the Debtor's bankruptcy case, with all such Liens, Claims, Encumbrances, and Other Interests to attach to the proceeds of the Sale in order of their priority, with the same validity, force, and effect which they had against the Property immediately before such transfer, subject to any claims and defenses the Debtor and/or the Estate may possess with respect thereto.

        The Transfer of the Property to Buyer pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Property, and shall vest the Buyer with all right, title, and interest of the Debtor and the Estate free and clear of all Liens, Claims, Encumbrances, and Other Interests against the Debtor, the Estate, or any other party, or the Property of any kind or nature whatsoever other than the L.A. Angeles County Lien for $1,456,889.60 which shall be paid in full from escrow.  If any person or entity which has filed financing statements, mortgages, deeds of trust, mechanic's liens, lis pendens, or other documents or agreements evidencing any Liens, Claims, Encumbrances, and Other Interests on or against the Property shall not have delivered to the Estate prior to the Close of the Sale, in proper form for filing and executed by appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, Encumbrances, and Other Interests that the person or entity has with respect to the Property, or otherwise, then: (i) the Debtor or Buyer is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Property; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed or recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Encumbrances, and Other Interests on or against the Property of any kind or nature whatsoever, other than the L.A. Angeles County Lien for $1,456,889.60 which shall be paid in full from escrow.

        The Buyer and Debtor will request that the Sale Order: (i) be effective as a determination that, upon the Closing of the Sale, all Liens, Claims, Encumbrances, and Other Interests of any

kind or nature whatsoever (other than the L.A. County Lien for $1,456,889.60 which shall be paid in full from escrow) existing as to the Estate, the Debtor, or the Property prior to the Closing, have been and hereby are adjudged and declared unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected; (ii) shall be effective as a determination that, upon the Closing of the Sale, any right of possession with respect to the Property or any portion thereof by any person or entity, including under any lease, have been terminated; (iii) be effective as a determination that, as of the Closing, no claims (as defined in Section 101(5) of the Bankruptcy Code) of any kind or nature (including any environmental claim or unrecorded property tax claim or entitlement of setoff, recoupment, or offset under any lease or license for the Property that existed prior to the Closing) shall be assertable against the Property or the Buyer, its affiliates, successors, or assigns, or any of their respective assets; and (iv) be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of deeds of trust, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other person and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

Further, the Sale, Sale Order and Agreement shall provide all persons and entities, including, but not limited to, all debt security holders, creditors of either the Debtor or the Estate, claim holders, governmental tax and regulatory authorities, lenders, stakeholders, holding any Liens, Claims, Encumbrances, and Other Interests of any kind or nature whatsoever (other than L.A. County Lien for $1,456,889.60 which shall be paid in full from escrow) against the Debtor, the Estate, or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, continent or noncontinent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Property prior to the Closing of the Sale, or the transfer of the Property, including, but not limited to, any rights of recoupment, setoff, or offset under any lease or license, based upon any action or inaction of the Debtor or the Estate prior to the Closing, are hereby forever barred, estopped, and permanently enjoined from asserting against

Buyer, its affiliates, officers, members or their successors or assigns, their property or the Property, such person's or entities' Liens, Claims, Encumbrances, and Other Interests.

The Sale, Sale Order and Agreement shall provide that any party or person to a contract, agreement, license, or lease with the Debtor and/or the Estate will be forever barred, estopped, and permanently enjoined from asserting any right, remedy, or defense (including any defense of offset, setoff, or recoupment) under such contract, agreement, license, or lease against Buyer (or its affiliates, officers, members, or their successors and assigns), the Property, or any other property of Buyer.

The Buyer will not assume any liabilities of the Debtor or the Estate as part of the Sale, under the Agreement, or pursuant to this Order. The Buyer shall have no liability or obligation with respect to the Property arising or accruing prior to the date of the Closing of the Sale.

This Court will retain jurisdiction to: (i) enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and any other supplemental documents or agreements executed in connection therewith or the Escrow; (ii) compel delivery and payment of the consideration provided for under the Agreement; (iii) resolve any disputes, controversies or claims arising out of or relating to the Agreement; and (iv) interpret, and enforce the provisions of this Order.

The terms and provisions of the Agreement and this Order shall be binding in all respects upon the Debtor, the Estate, all creditors, all persons or entities claiming any right of possession or tenancy in the Property, interest holders, any affected third parties including, but not limited to, all persons holding any Liens, Claims, Encumbrances, and Other Interests and any subsequent appointed trustee for the Debtor under any chapter of the Bankruptcy Code, and shall inure to the benefit of the Buyer, and its affiliates, successors and assigns.

Section 363)(f)(4) permits a debtor to sell property over the objection of a creditor that holds an interest that is in "bona fide" dispute. Although the term "bona fide" dispute is not defined in the Bankruptcy Code, courts interpreting section 363(f)(4) consistently have held that for a bona fide dispute to exist the court must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." In re Gulf States Steel, Inc., 285 B.R. 497, 507 (Bankr.N.D.Ala. 2002) (quoting In re Octagon Roofing, 123 B.R. 583, 590

1   (Bankr.N.D. Ill. 1991), and citing In re Bedford Square Associates, 247 B.R. 140, 145 (Bankr.

2   E.D. Pa 2000) although the debtor had not commenced a strong-arm proceeding to avoid a

3   provision from a shopping mall lease, the fact that it could was sufficient to establish a "bona fide

4   dispute"); In re Olympia Holding Corp., 129 B.R. 679, 681 (Bankr. M.D. Fla. 1991); In re Taylor,

5   198 B.R. 142, 162 (Bankr.D.S.C. 1996); In re Collins, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995).

6   And while the court does not need to determine the probable outcome of the underlying dispute, it

7   does require evidence that shows that there is in fact an "objective basis" for the dispute.  See

8   Gulf States Steel, Inc., 285 B.R. at 507-08.

9   **IV.    WAIVER OF THE PROVISIONS OF BANKRUPTCY RULE 6004(h) IS**

10  **APPROPRIATE.**

11       Bankruptcy Rule 6004(h) provides that an order approving the sale of estate property is

12  "stayed until the expiration of 14 days after the entry of the order, unless the court orders

13  otherwise."  Debtor desires the flexibility to close quickly, if requested by the Buyer.

14  **V.    CONCLUSION**

15       Based upon the foregoing, Debtor respectfully requests that the Motion be granted.

16  Dated: May 31, 2011                          Respectfully submitted:

17                                               LAW OFFICES OF JEFFREY S. BENICE

18
19                                               By: _____

20                                                   Jeffrey S. Benice,
                                                     Attorneys for Debtor

21  Dated: May 31, 2011            GOE & FORSYTHE, LLP

22
23                                 By: /s/Robert P. Goe

24                                     Robert P. Goe

25
26
27
28

12

### <u>DECLARATION OF DAN J. HARKEY</u>

I, Dan J. Harkey, declare as follows:

     1.     I am the President of Point Center Financial, Inc. ("PCF"), managing member of Chapter 11 Debtor and Debtor-in-Possession, Carson Valley, LLC ("Debtor").  As such, I have personal knowledge of the facts set forth herein, and if called upon to do so, could and would competently testify to those facts.

     2.     I make this Declaration in support of the Debtor's Motion For Order Approving:  Sale Of Real Property (14.33 acre parcel of land in Carson, California, identified as assessor's parcel number 7336-003-030) (the "Property") Free And Clear Of Certain Liens Pursuant To 11 U.S.C. Sections 363 (b), (f) and (m); Compensation Of Real Estate Agent; and Distribution Of Sale Proceeds (the "Motion").

     3.     Based on the Debtor's analysis of the estate's interest in and fair market value of the Property, and subject to Court approval, the Debtor has accepted the bid of VA Property Group, LLC or assignee ("Buyer"), to purchase the Property for $2,000,000, to purchase the Property.  A true and correct copy of the proposed Real Estate Purchase and Sale Agreement and Joint Escrow Instructions is attached hereto as **Exhibit "1"** and incorporated herein by this reference.

     4.     There is one (1) lien that appears against the Property, which is the secured claim filed by the Los Angeles County Treasurer and Tax Collector ("L.A. County Lien") in the amount of $1,456,889.60 and reflected in its proof of claim filed in this case.  A true and correct copy of the L.A. County Proof of Claim is attached hereto as **Exhibit "2"**.

     5.     Although not on title, Debtor and Buyer will be providing notice to various other parties who could attempt to assert disputed Claims, Liens, Encumbrances and Other Interests which this sale shall be free and clear of as set forth in the Motion.

     6.     This bankruptcy proceeding was filed October 15, 2010, by the filing of a voluntary Chapter 11 petition (the "Petition Date").

     7.     The Property is approximately 14.33 acres of raw land in Carson, California, formerly used as a dump and subject to the following recorded liens:

| Property Taxes | Amount Owed |
|---|---|
| L.A. County Treasurer and Tax Collector | $1,456,889.60 (Claim #1) |

8.      There are other potential alleged claims against the Property, namely by Ronald E. Snow, trustee of the Ronald E. Snow Trust and Independent Electric Supply, Inc., a California corporation, claiming a water nuisance issues, and the Department of Toxic Substances Control and other governmental agencies for clean-up costs, though to date Debtor has not received any written notice of any pending actions, suits, arbitrations, claims or proceedings, at law, in equity or otherwise affecting, or which may affect, all or any portion of the Property and Buyer will take free and clear of, among others, the alleged claims set forth in this paragraph.  L.A. County may have also tried to assess additional property taxes which are not included in the L.A. County Proof of Claim.

9.      Watt/Walder Limited Partnership ("Watt"), a California limited partnership, Lessor, filed a Notice of Non-Responsibility on July 7, 1992, regarding its lessee's, L.A. Cellular Telephone Company, installation of a cell tower on Debtor's Property.

10.      Contingent upon, among other things, Court approval, Debtor intends to sell the Property for $2 million to Buyer.  The terms of the sale are as follows:

(1)      The estate's interest in the Property shall be purchased for $2 million;

(2)      The purchase prices of $2 million will be paid in full through escrow;

(3)      The sale is made "as is, where is" without representation or warranty;

(4)      The sale shall be free and clear of all claims, liens, encumbrances and other interests against the Property; and

(5)      The sale will be subject to the Seller's representative's commission of 5% of the sale price to be paid to PCF which Debtor will pay from escrow only if Buyer closes on the Property on the Closing Date.

11.      Buyer is not related to anyone connected with the Debtor (other than as set forth above concerning Mr. Goe) and is a good faith purchaser as provided for in Bankruptcy Code Section 363(m).

12.    Fair market value for the Property is being realized.

13.    The Debtor seeks authority for the distribution of sale proceeds as follows:

a.    For normal closing costs.

b.    For any unpaid property taxes.

c.    All remaining funds to be paid to the Debtor for distribution as provided by the Bankruptcy Code priority scheme.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on *JUNE 1*, 2011 in *ALISO VIEJO*, California.

By: _____

Dan J. Harkey

# EXHIBIT 1

# EXHIBIT 1

# REAL ESTATE PURCHASE AND SALE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS

This Real Estate Purchase and Sale Agreement and Joint Escrow Instructions (the "**Agreement**") is made as of April 27, 2011, by and between Carson Valley, LLC, a California limited liability company ("**Seller**") and VA Property Group, LLC, a California limited liability company or its assignee ("**Buyer**"). Buyer hereby agrees to purchase and Seller hereby agrees to sell, subject to the terms and conditions set forth herein, that certain real property located at East of Figueroa Street, West of Main Street, North of Torrance Boulevard and South of the Torrance Lateral Floor Control Call in the City of Carson, which is also referred to as Assessor's Parcel Number 7336-003-030 more particularly described on Exhibit A attached hereto and incorporated herein (the "**Property**"). This Agreement is expressly contingent on approval by the Bankruptcy Court handling Seller's bankruptcy proceedings, Case No. 8:10-bk-24665-TA ("**Bankruptcy Court**"). Seller and Buyer at times are referred to as the "**Parties**".

1.     **Purchase Price**: The total purchase price (the "**Purchase Price**") for the Property is Two million dollars and zero cents ($2,000,000.00), including the Deposit (as defined below). Buyer agrees to pay the Purchase Price in cash or immediately available funds at Closing (as defined in Section 12).

2.     **Deposit**: Within two (2) business days of execution of this Agreement, Buyer will deposit with Chicago Title Insurance Company (the "**Title Company**"), _____, Commercial Escrow Officer, located at 4041 MacArthur Blvd., Suite 480, Newport Beach, CA 92660 or such other individuals providing such services on behalf of the Title Company from time to time, as a deposit, the sum of Ten thousand dollars and zero cents ($10,000.00) in cash, which deposit shall be applicable to the Purchase Price at the Closing (the "**Initial Deposit**"). Once the Feasibility Period (as defined below) has expired, if the Buyer has not delivered the Disapproval Notice (defined below), within one (1) business day the Buyer shall deliver to Escrow Holder an additional sum of Forty thousand dollars and zero cents ($40,000.00) (the "**Additional Deposit**"). The Initial Deposit and the Additional Deposit will collectively be referred to as the Deposit. The Deposit shall be nonrefundable (except in the event of Seller's default hereunder or failure of a condition under this Agreement for Buyer's benefit) and be immediately released to Seller without further direction to the Title Company. The Title Company shall be directed to invest the Deposit in an interest-bearing account mutually acceptable to Seller and Buyer. Any interest earned on this account shall be added to the Deposit and considered a part of the Deposit.

3.     **Contingencies**:

        (a)    Buyer's Contingency. Buyer shall have until 4:00 p.m., on the date fifteen (15) days after the Bankruptcy Court authorizes Debtor to enter into this Agreement assuming no appeal is filed or stay of the Approval Order (as defined below) is obtained as set forth in paragraph 3(b) below (the "**Feasibility Period**") within which to inspect the Property and review the documents described in Section 4(c) herein to determine the Property's suitability for Buyer's intended use and to investigate all other aspects of this transaction, including any financing Buyer may seek to obtain. If Buyer is not satisfied with the results of its inspection in its sole discretion, Buyer shall deliver to Seller written notice of its disapproval of such

inspections (the **"Disapproval Notice"**) prior to the expiration of the Feasibility Period. If Buyer delivers the Disapproval Notice to Seller prior to the expiration of the Feasibility Period, this Agreement shall terminate, the Deposit shall be returned to Buyer and the parties shall have no further obligations hereunder, except that the restoration, indemnification and hold harmless obligations of Buyer under Section 4 shall in any event survive the termination of this Agreement. If Buyer does not deliver the Disapproval Notice to Seller prior to the expiration of the Feasibility Period, Buyer shall be obligated hereunder without further contingency.

(b).    Bankruptcy Court Approval:   The Agreement is subject to approval by the Bankruptcy Court. Buyer acknowledges that Seller has filed a motion seeking authorization of the sale of the Property (the "Sale Motion"). The Debtor shall request an order on the Sale Motion (the "Approval Order") in a form and substance reasonably acceptable to the Parties that, among other things, (i) authorizes Seller to enter into such documents and agreements as may be necessary to implement such transaction (the "Transaction Documents"); (ii) approves and authorizes pursuant to sections 105, 363 and any other applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer free and clear of liens, liabilities, adverse claims of ownership and other interests of any kind and nature including, without limitation, all liens, liabilities, adverse claims of ownership and other interests, if any, in the Property including, but not limited to, claims of the Los Angeles County Treasurer and Tax Collector, the Los Angeles County Assessor, Ronald E. Snow, Ronald E. Snow Trust, Independent Electric Supply Inc., any owner of property located at 329 West Torrance Blvd., Carson, California, the DTSC or any other governmental agency, with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale; (iii) contains a finding that Buyer's purchase of the Property constitutes a purchase in good faith within the meaning of Section 363(m) of the Bankruptcy Code and that Buyer is entitled to have the protections afforded by that section; (iv) contains a finding that reasonable and adequate notice of the sale and transfer of the Property to Buyer has been provided to all parties required to be given notice under the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Central District of California; (v) contains a finding that neither Seller nor Buyer has engaged in any conduct that would cause or permit the sale of the Property to be avoided under Section 363(n) of the Bankruptcy Code; (vi) bars any third parties from asserting claims (including any claims for successor liability, including, without limitation, claims arising from unassumed unexpired leases or executory contracts), liens or interests of any kind or nature (including without limitation any claims, liens or interests asserted by any governmental agencies against Buyer or any affiliate or interest holder thereof, or any affiliate, officers or agent of any of the foregoing (vii) approves Seller's assumption and assignment to Buyer free and clear of liens of any real property leases and any personal property leases and contracts that the Parties agree in writing shall be assumed and assigned (collectively, the "Section 365 Contracts") pursuant to Section 365 of the Bankruptcy Code, subject to Seller's agreement to pay any cure amounts payable to the other parties to the Section 365 Contracts (other than allowable prepetition claims against Seller) as a condition to such assumption and assignment; (viii) provides that the Approval Order is binding on any and all successors and assigns, including any trustee appointed after enter of the Approval Order pursuant to Section 1104 of the Bankruptcy Code or pursuant to Section 701 or 702 of the Bankruptcy Code; and (ix) provides that except as otherwise agreed by the Parties, the rights and obligations of the Parties created under this Agreement and the Approval Order shall not be altered, modified or impaired by the terms of any Plan or order confirming such Plan, and shall survive confirmation of a Plan and closing or dismissal of the Case.

(c)    Seller's Contingency. Seller is a California limited liability company owning 100% of fee title to the Property.

(i)    Within five business days of the execution of this Agreement, Seller will submit the terms of the Agreement to its members ("Members") along with a ballot for the Members to approve or disapprove the Agreement in writing.    Seller's obligation to perform under this Agreement is contingent on receiving ballots approving the Agreement from Members comprising a majority interest of Seller.

(ii)    In the event Seller's contingency above is not satisfied, Seller shall deliver written notice of such non-satisfaction of contingencies at any time prior to the Closing.   If Closing fails to occur solely due to the non-satisfaction of Seller's contingencies, the entire Initial Deposit shall be returned to Buyer.

4.    **Buyer's Access To Property Before Closing**: Buyer shall have the right to enter upon the Property between the date of this Agreement and the Closing Date (as defined below) only in accordance with all of the following terms and conditions:

(a)    This Agreement has not been terminated;

(b)    Buyer may enter upon the Property only for the purpose of inspections, studies, surveys and reports and only upon twenty-four (24) hours prior written notice to Seller. Upon completion of such inspections, Buyer shall return the Property to its condition existing prior to any inspections. If this transaction fails to close for any reason other than a default by Seller hereunder, Buyer shall furnish Seller with a copy of all such inspections, studies, surveys and reports of any kind at no expense to Seller for third party charges (Buyer warranting that upon such delivery Buyer shall have fully paid for such materials and Buyer has the right to deliver same to Seller for Seller's use, with such warranty to survive termination) and shall assign or quitclaim all of Buyer's right, title and interest in and to any permits, approvals, or permit or approval applications. At Seller's option, Buyer shall provide Seller with lien waivers from those persons performing or preparing such inspections, studies, surveys or reports prior to commencement of the work;

(c)    To the extent such items are in the possession of Seller or Seller's property manager for the Property, Seller shall promptly deliver or make available upon written request from the Buyer the following items relating to the Property for review by Buyer:

(i)    any existing environmental reports;

(ii)    any existing survey;

(iii)    any existing property tax bill for the current tax year;

(iv)    any other relevant, non-proprietary contracts, studies, reports, and other documentation; and

(v)    any and all documents related to potential environmental claims.

Buyer takes such items "as-is", without any warranty or liability of Seller whatsoever for completeness, accuracy or validity.

(d)    Buyer shall indemnify Seller against and hold Seller harmless from any injuries, losses, liens, claims, judgments, liabilities, costs, expenses or damages (including reasonable attorneys' fees and court costs) which result from or arise out of any acts or omissions of Buyer or its representatives in, on or about the Property before Closing; provided, that, Buyer shall not be liable for losses or liabilities incurred by Seller in connection with the remediation of any hazardous materials discovered during Buyer's inspection of the Property. Buyer agrees to return the Property to substantially the same condition in which the Property was prior to Buyer's making any inspection of the Property.

(e)    Seller shall maintain the Property in its current condition through the Closing.

5.    **Title Insurance and Closing Documents**:

(a)    **Survey and Preliminary Report**: The parties shall cause Title Company to make available to Buyer a preliminary title report for an ALTA form owner's policy of title insurance issued by the Title Company showing the condition of Seller's title to the Property, together with copies of all exceptions to title (the **"Preliminary Report"**). Buyer shall give written notice to Seller within five (5) days after Buyer has received the Preliminary Report of any matters in the Preliminary Report to which Buyer objects. Any matters in the Preliminary Report shall be deemed approved by Buyer unless Seller receives written notice of Buyer's objections on or before such date. Seller shall have the option of curing such matters to which Buyer timely objects. Seller shall notify Buyer within ten (10) days of receipt of Buyer's notice of objections, which of Buyer's objections to title Seller elects to cure (provided, however, failure to notify shall be deemed an election not to cure, and further provided that Seller shall not be required to actually cure any such defect until Closing). In the event Seller elects not to cure all such matters, Buyer must elect, within three (3) days of being notified of Seller's election not to cure, to accept and approve such matters in Seller's title as Seller declines to cure (without adjustment to the Purchase Price) and waive Buyer's objections thereto, or, alternatively, and as its sole remedy, to terminate this Agreement. In the event Buyer fails to affirmatively accept, approve and waive the objected to matters or terminate the Agreement within such time period, such failure will be deemed an election to accept, approve and waive the objected to matters. In the event Buyer so elects to terminate this Agreement, the Title Company shall refund the Deposit and any and all rights, liabilities or obligations of Seller and Buyer under this Agreement shall terminate and be of no further force or effect except those which may have already accrued. Notwithstanding anything to the contrary in this Agreement, on or before Closing, Seller shall satisfy and remove all monetary liens from the Property evidencing private debts (other than liens for non-delinquent real property taxes and assessments) and Buyer need not expressly object to such liens or exceptions as may be disclosed on the Title Report.

(b)    **Buyer's Title Insurance**: As a condition to Closing for Buyer's benefit, the Title Company shall commit to deliver to Buyer an ALTA form owner's policy of title insurance in the face amount of the Purchase Price, including exceptions and matters contained in an ALTA standard coverage owner's policy, and the exceptions and matters specified in the Preliminary Report which have been approved or deemed approved by Buyer (the "**Title Policy**"). Except as otherwise provided in Section 5(a) above, Seller shall have no responsibility whatsoever for removing any title defects or encumbrances which may affect the ability of the Title Company to issue an ALTA owner's title insurance.

(c)    **Closing Documents**:    At Closing, Seller shall deliver to Buyer the following documents:

(i)    An executed original grant deed to the Property in the form attached hereto as Exhibit B;

(ii)    An executed original affidavit that the Seller is not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act of 1980, as amended;

(iii)    An executed original withholding certificate or other evidence sufficient to establish that Buyer is not required to withhold any portion of the Purchase Price pursuant to Section 18662 of the California Revenue and Taxation Code; and

(iv)    The Bankruptcy Court Approval Order.

(d)    **Further Assurances**:    The parties agree that all documents shall be in form and substance reasonably acceptable to Seller and Buyer and necessary to carry out the intent of the parties hereto. The parties further agree to execute such other documents and instruments not listed above as may be reasonably necessary to carry out the intent hereof.

6.    **Disclaimer and Release of Claims**:    SUBJECT TO THE BANKRUPTCY COURT APPROVAL ORDER, THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING PURCHASED BY BUYER ON AN "AS IS," "WHERE IS" AND "WITH ALL FAULTS" BASIS. BUYER HEREBY WAIVES AND RELINQUISHES ALL RIGHTS AND PRIVILEGES ARISING OUT OF, OR WITH RESPECT TO, ANY REPRESENTATIONS, WARRANTIES OR COVENANTS, WHETHER EXPRESS OR IMPLIED, WHICH MAY HAVE BEEN MADE OR GIVEN, OR WHICH MAY BE DEEMED TO HAVE BEEN MADE OR GIVEN, BY SELLER OR ITS REPRESENTATIVES, EXCEPT FOR THOSE REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT.

EXCEPT FOR THE REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT, BUYER HAS NOT RELIED UPON AND WILL NOT RELY UPON, AND SELLER EXPRESSLY DISCLAIMS, ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO, AND SHALL HAVE NO LIABILITY FOR: (i) THE CONDITION OF THE PROPERTY OR THE SUITABILITY OF THE PROPERTY FOR HABITATION OR FOR BUYER'S INTENDED USE OR FOR ANY USE WHATSOEVER; (ii) ANY APPLICABLE BUILDING, ZONING OR FIRE LAWS OR

REGULATIONS OR WITH RESPECT TO COMPLIANCE THEREWITH OR WITH RESPECT TO THE EXISTENCE OF OR COMPLIANCE WITH ANY REQUIRED PERMITS, IF ANY, OF ANY GOVERNMENTAL AGENCY; (iii) THE AVAILABILITY OR EXISTENCE OF ANY WATER, SEWER OR UTILITIES, ANY RIGHTS THERETO, OR ANY WATER, SEWER OR UTILITY DISTRICTS; (iv) ACCESS TO ANY PUBLIC OR PRIVATE SANITARY SEWER SYSTEM; (v) THE FACT THAT ALL OR A PORTION OF THE PROPERTY MAY BE LOCATED ON OR NEAR AN EARTHQUAKE FAULT LINE OR LOCATED IN AN ALQUIST-PRIOLO SPECIAL STUDY ZONE; OR (vi) THE PRESENCE OF ANY HAZARDOUS SUBSTANCES IN THE PROPERTY, OR THE PRESENCE OF ANY ENVIRONMENTALLY HAZARDOUS WASTES OR MATERIALS ON OR UNDER THE PROPERTY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER SHALL HAVE NO LIABILITY TO BUYER WITH RESPECT TO THE CONDITION OF THE PROPERTY UNDER COMMON LAW, OR ANY FEDERAL, STATE, OR LOCAL LAW OR REGULATION, INCLUDING BUT NOT LIMITED TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 AS AMENDED, 42 U.S.C.A. SECTIONS 9601 ET SEQ., AND THE CALIFORNIA HEALTH AND SAFETY CODE. BUYER HEREBY RELEASES AND WAIVES ANY AND ALL CLAIMS WHICH THE BUYER HAS OR MAY HAVE AGAINST THE SELLER UNDER ANY OF THE FOREGOING LAWS OR WITH RESPECT TO THE CONDITION OF THE PROPERTY. BUYER ACKNOWLEDGES TO SELLER THAT BUYER IS GIVEN THE OPPORTUNITY UNDER THIS AGREEMENT TO FULLY INSPECT THE PROPERTY AND BUYER ASSUMES THE RESPONSIBILITY AND RISKS OF ALL DEFECTS AND CONDITIONS, INCLUDING SUCH DEFECTS AND CONDITIONS, IF ANY, THAT CANNOT BE OBSERVED BY CASUAL INSPECTION.

BUYER HEREBY ACKNOWLEDGES THAT IT IS FAMILIAR WITH CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

BUYER WAIVES AND RELINQUISHES ANY RIGHT OR BENEFIT WHICH IT HAS OR MAY HAVE UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE TO THE FULL EXTENT THAT IT MAY LAWFULLY WAIVE SUCH RIGHTS AND BENEFITS. IN CONNECTION WITH SUCH WAIVER AND RELINQUISHMENT, BUYER ACKNOWLEDGES THAT IT IS AWARE THAT IT OR ITS ATTORNEYS OR ACCOUNTANTS MAY HEREAFTER DISCOVER FACTS IN ADDITION TO OR DIFFERENT FROM THOSE WHICH IT NOW KNOWS OR BELIEVES TO EXIST WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT OR SELLER, BUT THAT IT IS BUYER'S INTENTION HEREBY FULLY, FINALLY, AND FOREVER TO SETTLE AND RELEASE ALL OF THE CLAIMS, DISPUTES, AND DIFFERENCES, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, WHICH NOW EXIST OR MAY EXIST HEREAFTER BETWEEN BUYER AND SELLER WITH REGARD TO THE PROPERTY. THIS AGREEMENT SHALL BE AND REMAIN IN EFFECT AS A FULL AND COMPLETE RELEASE NOTWITHSTANDING THE DISCOVERY OR EXISTENCE OF ANY SUCH ADDITIONAL OR DIFFERENT FACTS.

Seller: _____    Buyer: _____

7.    **Risk of Loss**:

(a)    **Casualty**:  Risk of loss of or damage to the Property shall be borne by Seller until the earlier of Closing, or the date on which Buyer takes possession of the Property, and risk of loss of or damage to the Property shall be borne by Buyer thereafter.  In the event Seller learns of a material loss of or damage to the Property, Seller shall promptly notify Buyer.

(b)    **Condemnation**:  Seller shall promptly notify Buyer of any condemnation or eminent domain proceeding which affects the Property.  In the event of any condemnation or eminent domain proceeding, or a deed in lieu or under threat thereof, which affects a material portion of the Property, Buyer may elect either to terminate this Agreement, or to purchase the Property in the condition existing on the Closing Date without adjustment of the Purchase Price.  If Buyer elects to terminate this Agreement, the Deposit and any Extension Payments previously made by Buyer shall be returned to Buyer.  If Buyer elects to purchase the Property, Seller shall not be liable to restore the Property, and Buyer shall be entitled to any condemnation award or payment in lieu thereof payable to Seller; provided, however, that Buyer may sue for or otherwise seek payment of any condemnation award or payment in lieu thereof to which Buyer may be independently entitled under applicable law.

8.    **Possession**:  Buyer shall be entitled to possession on Closing

9.    **Escrow Instructions**:  Upon execution of this Agreement, the parties hereto shall open an escrow by depositing with the Title Company as escrow holder ("**Escrow Holder**") an executed counterpart of this Agreement and the Deposit.  Buyer and Seller shall, on demand, deposit in escrow with the Title Company all instruments and monies necessary to complete the sale in accordance with this Agreement.  This Agreement shall serve as the instructions to Escrow Holder for consummation of the purchase and sale contemplated hereby. Escrow Holder shall signify its acknowledgment and agreement to the escrow instructions contained herein by execution of the acknowledgment on the signature page hereof.

Escrow Holder is authorized and directed by Seller to comply with all disbursement directions and instructions provided by Point Center Financial, Inc. ("PCF") including, but not limited to, immediate disbursement of all deposits and sale proceeds directly to PCF.

If necessary, Seller and Buyer shall execute such supplemental escrow instructions as may be appropriate to enable the Escrow Holder to comply with the terms of this Agreement.  The parties expressly waive, however, any provision in such supplemental escrow instructions that would grant a defaulting party a right to cure after time for performance has expired.  If there is any conflict or inconsistency between such supplemental escrow instructions and this Agreement, this Agreement shall control.

10.    **Closing and Closing Date**:  The sale shall be closed (the "**Closing**") in escrow in the office of the Title Company on a date to be selected by Buyer by written notice to Seller (the

"**Closing Date**"). The Closing Date shall occur not later than the date Twenty (20) days after expiration or waiver of the Feasibility Period.

11.    **Proration of Taxes, Etc**: Taxes and assessments for the current year, water and other utilities shall be prorated as of the Closing Date.

12.    **Closing Costs**:

(a)    **Seller's Costs**:  Seller shall pay (i) that portion of the premium for the Title Policy which would have been charged for a CLTA policy, (ii) 50% of the Title Company's escrow fees, and (iii) 50% any transfer taxes payable on the conveyance of the Property and (iv) 0% costs of the survey, (v) Seller shall pay Five percent (5.00%) commissions of the Purchase Price to be paid to PCF ("Sellers Agent") upon the close of escrow.

(b)    **Buyer's Costs**:  Buyer shall pay (i) 50% of the cost of recording the conveyance of the Property, (ii) 50% of the Title Company's escrow fees, (iii) 50% of that portion of the premium for the title insurance policy that exceeds the cost for a CLTA policy and premiums for endorsements to the title insurance, (iv) and the cost of the ALTA Survey.

(c)    **Prorations and Other Costs**:  All non-delinquent real property taxes and general and special assessments reflected on the Title Report shall be prorated as of Closing based upon the most recent assessments.  Except as otherwise provided herein, all other fees or charges shall be paid as is customary in the community.

13.    **Default**:

(a)    Time is of the essence of this Agreement.

(b)    IN THE EVENT BUYER FAILS, WITHOUT LEGAL EXCUSE, TO COMPLETE THE PURCHASE OF THE PROPERTY OR TO PERFORM ANY COVENANT OR AGREEMENT OF BUYER CONTAINED HEREIN, THE DEPOSIT SHALL BE PAID TO SELLER AS THE SOLE AND EXCLUSIVE REMEDY AT LAW OR IN EQUITY AVAILABLE TO SELLER FOR SUCH FAILURE.  BUYER EXPRESSLY AGREES THAT THE RETENTION OF THE DEPOSIT BY SELLER REPRESENTS A REASONABLE ESTIMATION OF THE DAMAGES IN THE EVENT OF BUYER'S DEFAULT, THAT ACTUAL DAMAGES MAY BE DIFFICULT TO ASCERTAIN AND THAT THIS PROVISION DOES NOT CONSTITUTE A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369 BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677.  IN THIS RESPECT, BUYER AND SELLER ACKNOWLEDGE THAT THESE DAMAGES HAVE BEEN SPECIFICALLY NEGOTIATED BETWEEN BUYER AND SELLER AND ARE, INTER ALIA, TO COMPENSATE SELLER FOR TAKING THE PROPERTY OFF THE MARKET AND TO COMPENSATE SELLER FOR ITS COSTS AND EXPENSES ASSOCIATED WITH THIS AGREEMENT. BUYER HEREBY WAIVES THE RIGHTS AND BENEFITS OF ANY LAW, RULE, REGULATION OR ORDER NOW OR HEREAFTER EXISTING THAT WOULD ALLOW BUYER TO CLAIM A REFUND OF THE DEPOSIT A PENALTY OR FOR ANY OTHER REASON.  IF, NOTWITHSTANDING THE PROVISIONS OF THIS

PARAGRAPH, A COURT DETERMINES THAT SELLER IS NOT ENTITLED TO
RETAIN THE ENTIRE DEPOSIT AS A RESULT OF BUYER'S DEFAULT, SELLER
SHALL BE ENTITLED TO SEEK ANY AND ALL DAMAGES PROVIDED BY LAW.

Seller: _____    Buyer: _____

(c)    If Seller fails to perform any covenant or agreement of Seller contained
herein, Buyer may within thirty (30) days of the first occurrence of such failure to perform, as its
sole and exclusive remedy, either: (i) terminate this Agreement, receive a refund of the Deposit
and any Extension Payments made and maintain an action for damages, provided, however, if
Buyer elects to terminate this Agreement and sue for damages, Buyer's recovery for damages
shall be limited to the actual out-of-pocket costs incurred by Buyer in connection with the
acquisition of the Property, and in no event shall Buyer be entitled to recover damages based on
lost profits or the benefit of Buyer's bargain or (ii) specifically enforce this Agreement.

14.    **Oral Agreements and Representations**:  This Agreement represents the final
and complete expression of the parties hereto with respect to the subject matter hereof.  There are
no oral or other agreements, including but not limited to any representations or warranties, which
modify or affect this Agreement.  Seller shall not be bound by, nor liable for, any warranties or
other representations made by any other person, partnership, corporation or other entity unless
such representations are set forth in a written instrument duly executed by Seller.  Buyer
acknowledges to Seller that in entering into this Agreement, Buyer is not relying on any
warranties except those expressly set forth herein.

15.    **Assignment**:  Buyer may take title to the Property in its own name or in the name
of a nominee.  Buyer may also assign this Agreement to an entity in which Buyer (or an affiliate
of Buyer) owns an equity interest and is responsible for day-to-day management, provided, that,
such assignee assumes in writing all of the Buyer's obligations hereunder.  Any such assignment
shall in no way release Buyer from any of its obligations or liabilities under this Agreement.

16.    **Authority**:  Buyer and Seller each warrant and represent to the other that they
have the authority to enter into this Agreement.

17.    **Non-merger**:  The terms and provisions of this Agreement shall not merge in, but
shall survive, the Closing of the transaction contemplated hereunder and the deed to be delivered
pursuant hereto.

18.    **Brokers**:  Seller and Buyer understand that Point Center Financial, Inc. ("PCF")
represents the Seller in the sale of the Property and Seller acknowledges that they have
authorized and consented to such representation.

(a)    **Representation and Warranty.**  Buyer represents and warrants that it has
had no dealings with any real estate brokers in connection with the above contemplated
transaction. Seller represents and warrants that it has had no dealings with any real estate brokers
in connection with the above contemplated transaction other than PCF. Both Buyer and Seller
shall indemnify and hold harmless the other from a breach of the foregoing representation and
warranty.

(b)    **Agents Commission; Indemnity.** Escrow Holder shall pay from Seller's proceeds a commission in the amount of Five percent (5%) of the Purchase Price to PCF as Agent for Seller. Said commission is payable in full on the Closing Date and shall be paid in cash through Escrow. Neither party has had any contact or dealings regarding the Property, or any communication in connection with the subject matter of this transaction, through any licensed real estate broker or person, other than the Agents, who can claim a commission or finder's fee as a procuring cause of the sale contemplated in this Agreement. If any other broker, agent or finder perfects a claim for a commission or finder's fee based on any contract, dealings, or communication with a party ("Indemnifying Party"), then the Indemnifying Party shall indemnify, defend, and hold the other party ("Nonindemnifying Party") harmless from all costs and expenses (including reasonable attorney fees and costs of defense) incurred by the Nonindemnifying Party in connection with such claim.

19.    **Notices**: Any notice required or desired to be given hereunder shall be in writing and shall be addressed to the address of the party to be served, at the address provided in this Section. Each notice shall be deemed effective and given (i) upon receipt, if personally delivered (which shall include delivery by courier or overnight delivery service), (ii) upon being telephonically confirmed as transmitted, if sent by telefax or telecopy, (iii) three (3) business days after deposit in the United States mail, certified and postage prepaid, and properly addressed to the party to be served, and (iv) upon receipt if sent any other way. The parties hereto may from time to time, by written notice to the other in accordance with this Section, designate a different address than that set forth below for the purpose of giving notice hereunder.

If to Seller:            Carson Valley, LLC

                         c/o Point Center Financial, Inc.
                         7 Argonaut
                         Aliso Viejo, CA 92656
                         Attn: V. Alan Bergfeld, Esq., General Counsel

If to Buyer:             VA Property Group, LLC

                         c/o Brian Garbutt
                         18101 Von Karman Avenue, Suite 510
                         Irvine, CA 92612

20.    **Attorneys' Fees**: In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees and experts' fees, including at trial, on appeal, and in any bankruptcy proceedings.

21.    **State Law**: This Agreement shall be governed by and construed in accordance with the laws of the state of California.

22.    **Counterparts/Facsimile**:  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  A facsimile may be deemed an original for all purposes.

23.    **Seller's Representations and Warranties**.  In consideration of Buyer entering into this Agreement and as an inducement to Buyer to purchase the Property, Seller makes the following representations and warranties, each of which is material and is being relied upon by Buyer (and the continued truth and accuracy of which shall constitute a condition precedent to Buyer's obligations hereunder):

(a)    **Representations Regarding Seller's Authority**.

(i)    Seller has the necessary power, right and authority to enter into this Agreement and the instruments referenced herein, and to consummate the transaction contemplated hereby;

(ii)    All requisite action (corporate, trust, partnership, limited liability company or otherwise) has been taken by Seller in connection with the entering into this Agreement, the instruments referenced herein, and the consummation of the transaction contemplated hereby.  No consent of any member, partner, shareholder, trustee, trustor, beneficiary, creditor, investor, judicial or administrative body, governmental authority or other party is required or has been obtained;

(iii)    The individuals executing this Agreement and the instruments referenced herein on behalf of Seller have the legal power, right, and actual authority to bind Seller to the terms and conditions hereof and thereof;

(iv)    This Agreement and all documents required hereby to be executed by Seller are and shall be valid, legally binding obligations of and enforceable against Seller in accordance with their terms; and

(v)    Neither the execution and delivery of this Agreement and the documents and instruments referenced herein, nor the incurrence of the obligations set forth herein, nor the consummation of the transaction contemplated herein, nor compliance with the terms of this Agreement and the documents and instruments referenced herein conflict with or result in the material breach of any terms, conditions or provisions of, or constitute a default under, any bond, note, or other evidence of indebtedness or any contract, indenture, mortgage, deed of trust, loan, partnership agreement, lease or other agreement or instrument to which Seller is a party or affecting the Property;

(b)    **Threatened Actions**.  Other than a threatened lawsuit by Ronald E. Snow, trustee of Ronald E. Snow Trust and Independent Electric Supply, Inc., a California corporation owners of a property located at 329 West Torrance Boulevard, in the City of Carson, California claiming a water nuisance issue and the DTSC for clean-up costs, to the best of Seller's actual knowledge, Seller has not received written notice of any pending actions, suits, arbitrations, claims or proceedings, at law, in equity or otherwise, affecting, or which may affect, all or any portion of the Property or in which Seller is or will be a party by reason of Seller's ownership of the Property, including, but not limited to, judicial, municipal or administrative proceedings in

eminent domain, collection actions, health and safety violations, federal, state or local agency actions regarding environmental matters, federal environmental protection agency or zoning violations, personal injuries or property damages alleged to have occurred at the Property or by reason of the condition or use of or construction on the Property. Seller is not aware of the existence of any threatened or contemplated actions, claims or proceedings. As set forth above in the Approval Order, Buyer will take free and clear of, among others, the alleged claims set forth in this paragraph 23(b);

(c)    **Leases**. Other than an LA Cellular Lease, there are no leases or other agreements (whether oral or written), affecting or relating to the right of any party with respect to the possession of the Property, or any portion thereof, which are obligations which will affect the Property or any portion thereof subsequent to the recordation of the Grant Deed;

(d)    **Contracts**. There are no maintenance contracts, service contracts or any other contracts (whether oral or written) affecting or relating to the Property which will survive the Closing; and

(e)    **Representations and Warranties at Closing**. The representations and warranties of Seller set forth in this Agreement shall be deemed to be remade and restated by Seller on and as of the Closing and shall survive the Closing.

24.    **Buyer's Representations and Warranties.**    Buyer hereby represents and warrants that:

(a)    Buyer has full power and authority to enter into and perform this Agreement in accordance with its terms.

(b)    The individual executing this Agreement on behalf of Buyer is authorized to do so and, upon their executing this Agreement, this Agreement shall be binding and enforceable upon Buyer in accordance with its terms.

(c)    Buyer has fully inspected and investigated or shall, prior to the end of the Feasibility Period, fully inspect and investigate the Property with respect to all factors bearing on the intended development and use of the Property, including but not limited to the environmental suitability of the Property. Buyer further represents that Buyer has not relied and is not relying upon any representations or statements of Seller or any real estate broker in connection with the Property, or its zoning, fitness or merchantability for any particular use or purpose, availability of water or utilities, soil conditions, environmental condition, flooding, physical condition or title, as those terms are broadly construed.

25.    **Seller's Covenants**.    Seller hereby covenants with Buyer, as follows:

(a)    From and after the date of this Agreement, Seller shall not, without the prior written consent of Buyer, which consent Buyer may withhold in its sole, absolute and subjective discretion, enter into any maintenance contract, service contract, listing agreement or any other contract affecting or relating to the Property which will survive the Closing or will otherwise affect the use, operation or enjoyment of the Property after the Closing;

(b)    After the date of this Agreement, Seller shall not alienate, lien, encumber, grant any easements, create any restrictions or otherwise change the current condition of title to the Property or transfer all or any portion of the Property (other than to Buyer at the Closing) without the prior written consent of Buyer, which consent may be granted or withheld in Buyer's sole and absolute discretion;

(c)    From and after the date of this Agreement, Seller shall not enter into any lease of all or any portion of the Property without the prior written consent of Buyer, which consent may be granted or withheld in Buyer's sole and absolute discretion; and

(d)    From the date of this Agreement until the Closing, Seller shall deliver to Buyer a copy of each and every communication or notice Seller receives from any governmental body pertaining to the Property upon Seller's receipt of same. Seller shall not make any applications for or undertake any processing of amendments or modifications to any of the current entitlements to the Property without the prior written consent of Buyer, which Buyer may withhold in its sole and absolute discretion.

26.    **Computation of Time Periods**. If the date upon which the Feasibility Period expires, the Closing Date or any other date or time period provided for in this Agreement is or ends on a Saturday, Sunday or federal, state or legal holiday, then such date shall automatically be extended until 5 p.m. Pacific Time of the next day which is not a Saturday, Sunday or federal, state or legal holiday.

27.    **Marketing**. Notwithstanding anything herein to the contrary, nothing herein shall prohibit Seller from continuing to market the Property and accept back up offers, which must be contingent on the failure of this Agreement to close escrow.

28.    **Severability**. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be valid under applicable law, but if any provision of this Agreement shall be invalid or prohibited hereunder, such provision shall be ineffective to the extent of such prohibition or invalidation which shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

29.    **Waiver**. The waiver by either party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted herein, nor shall same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

30.    **Entire Agreement**. This Agreement contains the entire agreement of the parties hereto with respect to the matters covered hereby, and supersedes all prior agreements (whether written or oral, express or implied), arrangements and understandings between the parties, and no other agreement, statement or promise made by either party hereto that is not contained herein shall be binding or valid.

31.    **Amendments**. This Agreement may be amended only by written document signed by each of the parties hereto.

32.    **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, devisees, personal and legal representatives, successors and, when permitted, assigns.

33.    **Headings and Construction**.    The headings set forth in this Agreement are inserted only for convenience and are not in any way to be construed as part of this Agreement or a limitation on the scope of the particular section to which it refers.    Where the context requires herein, the singular shall be construed as the plural, and neuter pronouns shall be construed as masculine and feminine pronouns, and vice versa.    This Agreement shall be construed according to its fair meaning and neither for nor against either party hereto.    Wherever the term "including" is used in this Agreement, the term shall mean "including, without limitation."

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

SELLER:                                Carson Valley, LLC, a California limited
                                        liability company

                                        By: Point Center Financial, Inc., a California
                                        corporation, its managing member

                                        By: _____
                                        Name: Dan L Harker
                                        Its: President


BUYER:                                  VA Property Group, LLC

                                        By: _____
                                        Name: Brian Garbutt
                                        Its:  Managing Member



[BUYER AND SELLER MUST
INITIAL PARAGRAPHS 6 AND 13]



AGREED & ACKNOWLEDGED:

"ESCROW HOLDER"

Chicago Title Insurance Company

By: _____

Name: _____

Its: _____

## EXHIBIT A

LEGAL DESCRIPTION

Parcel 4, in the City of Carson, County of Los Angeles, State of California, as per map recorded in Book 62, Page 68 of Parcel Maps, in the Office of the County Recorder of said County.

Excepting from that portion included within Lots 38, 39 and 44 of Tract No. 6378, all oil, gas, hydrocarbon substances and other minerals in and under said land with the right to drill for, mine, extract, take and remove the same from any wells of shafts located on any land adjacent to the above described land without accounting to the Grantee for any rentals, royalties or proceeds from the sale of such minerals, as reserved in deed from Sunset Oil Company, recorded August 2, 1944 in Book 20925, Page 72 of Official Records.

Also except all oil, gas and other hydrocarbon substances and all other minerals in and under said land (except the South 350 feet of Lots 36 and 37), as reserved by Sunset Oil Company, a corporation in deed recorded July 1, 1955 in Book 48230,page 289 of Official Records and by Sunset International Petroleum Corporation, a corporation in deed recorded July 20, 1960 in Book D-916, Page 193 of Official Records.

Also except from said land that portion lying within the lines of Lot 91 Tract 4671, all oil, gas, petroleum and other hydrocarbon substances which lie below a plane of 500 feet from the surface of said land as excepted in the deed from Del Amo Estate Company, a corporation, recorded November 8, 1963 in Book D-2250, Page 748 of Official Records.

## EXHIBIT B

### FORM OF GRANT DEED

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

_____

_____

Attention: _____

MAIL ALL TAX STATEMENTS TO:

Same as above

Assessor's Parcel Number _____

_____

(Above Space for Recorder's Use Only)

The undersigned grantor(s) declare(s): Documentary transfer tax is $

( )    computed on full value of property conveyed, or

( )    computed on full value less value of liens and encumbrances

( )    remaining at time of sale.

( )    Unincorporated area: ( ) City of _____

GRANT DEED

FOR A VALUABLE CONSIDERATION, RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED, _____, hereby grants to the real property described in Exhibit A attached hereto and made a part hereof (the "**Property**").

EXHIBIT B - 1

Carson Valley and VA Property Group PSA 4/27/2011

Exhibit 1                                    Page 32

   This conveyance is subject to non-delinquent taxes and assessments, and all matters of record affecting title to the Property.

   DATED:

            _____,

        a_____

        By:_____

         By:_____

        By:_____

        Name:_____

        Its:_____

EXHIBIT B - 2

Carson Valley and VA Property Group PSA 4/27/2011

Exhibit 1                    Page 33

EXHIBIT A: Grant Deed

LEGAL DESCRIPTION

Parcel 4, in the City of Carson, County of Los Angeles, State of California, as per map recorded in Book 62, Page 68 of Parcel Maps, in the Office of the County Recorder of said County.

Excepting from that portion included within Lots 38, 39 and 44 of Tract No. 6378, all oil, gas, hydrocarbon substances and other minerals in and under said land with the right to drill for, mine, extract, take and remove the same from any wells of shafts located on any land adjacent to the above described land without accounting to the Grantee for any rentals, royalties or proceeds from the sale of such minerals, as reserved in deed from Sunset Oil Company, recorded August 2, 1944 in Book 20925, Page 72 of Official Records.

Also except all oil, gas and other hydrocarbon substances and all other minerals in and under said land (except the South 350 feet of Lots 36 and 37), as reserved by Sunset Oil Company, a corporation in deed recorded July 1, 1955 in Book 48230,page 289 of Official Records and by Sunset International Petroleum Corporation, a corporation in deed recorded July 20, 1960 in Book D-916, Page 193 of Official Records.

Also except from said land that portion lying within the lines of Lot 91 Tract 4671, all oil, gas, petroleum and other hydrocarbon substances which lie below a plane of 500 feet from the surface of said land as excepted in the deed from Del Amo Estate Company, a corporation, recorded November 8, 1963 in Book D-2250, Page 748 of Official Records.

EXHIBIT B - 3

Exhibit 1                                             Page 34

ACKNOWLEDGMENT

STATE OF_____)

                        ) ss.

COUNTY OF_____)


On_____, before me_____, personally
appeared _____, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his authorized capacity, and
that by his signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

WITNESS my hand and official seal.


_____
Notary Public in and for said
County and State [SEAL]


EXHIBIT B - 4

# EXHIBIT 2

# EXHIBIT 2

# Central District Of California
# Claims Register

## 8:10-bk-24665-TA Carson Valley, LLC

**Judge:** Theodor Albert **Chapter:** 11
**Office:** Santa Ana **Last Date to file claims:**
**Trustee:** **Last Date to file (Govt):**

| Creditor: (28805755)<br>Los Angeles County Treasurer and Tax Collector<br>PO Box 54110<br>Los Angeles CA 90054-0110 | Claim No: 1<br>*Original Filed*<br>*Date:* 03/09/2011<br>*Original Entered*<br>*Date:* 03/11/2011 | Status:<br>*Filed by:* CR<br>*Entered by:* Lyons, Maeve<br>*Modified:* |
|---|---|---|

Secured claimed: $1456889.60

**Total** claimed: **$1456889.60**

*History:*

Details | 1-1 | 03/09/2011 Claim #1 filed by Los Angeles County Treasurer and Tax Collector, total amount claimed: $1456889.6 (Lyons, Maeve )

*Description:*

*Remarks:*

## Claims Register Summary

**Case Name:** Carson Valley, LLC
**Case Number:** 8:10-bk-24665-TA
**Chapter:** 11
**Date Filed:** 10/15/2010
**Total Number Of Claims:** 1

| | Total Amount Claimed | Total Amount Allowed |
|---|---|---|
| **Unsecured** | | |
| **Secured** | $1456889.60 | |
| **Priority** | | |
| **Unknown** | | |
| **Administrative** | | |
| **Total** | $1456889.60 | $0.00 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/27/2011 08:50:39 | | | |
| **PACER** | gf0063 | **Client** | carson valley-rpg |

| Login: | | Code: | |
|---|---|---|---|
| Description: | Claims Register | Search Criteria: | 8:10-bk-24665-TA Filed or Entered From: 1/1/2010 Filed or Entered To: 1/3/2012 |
| Billable Pages: | 1 | Cost: | 0.08 |

ORIGINAL

B 10 (Official Form 10) (12/07)

| **UNITED STATES BANKRUPTCY COURT**  Central District of California | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:  Carson Valley, LLC | Case Number:  10-24665-TA (Ch # 11) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Los Angeles County Treasurer and Tax Collector

Name and address where notices should be sent:

Los Angeles County Treasurer and Tax Collector
PO Box 54110, Los Angeles, CA 90054-0110

Telephone number:
(213) 974-7803

**FILED**

MAR -9 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

| 1. Amount of Claim as of Date Case Filed:  $            1,456,889.60 | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:**  Property Taxes
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:**  2002

   **3a. Debtor may have scheduled account as:**  7336-003-030
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $ 40,087,483.00  **Annual Interest Rate___%**

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $            **Basis for perfection:**_____

**Amount of Secured Claim:** $ 1,456,889.60  **Amount Unsecured:** $_____

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| **Date:**  03/07/2011 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  Man-Ling Kuo, Tax Services Clerk I | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit 2                    Page 38

# DECLARATION OF SERVICE OF MAIL

**STATE OF CALIFORNIA,** County of Los Angeles:

**Man-Ling Kuo** states: I am and at all times herein mentioned have been a citizen of the United States and a resident of the County of Los Angeles, over the age of eighteen years and not a party to nor interested in the within action; that my business address is 122 Kenneth Hahn Hall of Administration, City of Los Angeles, County of Los Angeles, State of California; that I am readily familiar with the business practice of the Los Angeles County Treasurer and Tax Collector for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence would be deposited within the United States Postal Service that same day in the ordinary course of business;

That on the **7**th **day** of **March, 2011,** I served the attached **PROOF OF CLAIM** upon Interested Party (ies) by depositing copies thereof, enclosed in a sealed envelope and placed for collection and mailing on that date following ordinary business practices in the United States Postal Service, addressed as follows:

Debtor or Debtor's Attorney

> **Jeffrey S Benice**
> Law Offices of Jeffrey S Benice
> 650 Town Center Drive Ste 1300
> Costa Mesa, CA 92626

Chapter 7 or 13 Standing Attorney

> **N/A**

I declare under penalty of perjury that the foregoing is true and correct. Executed this **7**th **day** of **March, 2011,** at Los Angeles, California.

_____
**Man-Ling Kuo**

Exhibit 2                                        Page 39

# SUBSTITUTE SECURED PROPERTY TAX BILL

### JULY 1, 2006 TO JUNE 30, 2007

CRT: R#14
E538947

PLEASE MAKE CHECK PAYABLE TO:
**LOS ANGELES COUNTY TAX COLLECTOR**
225 North Hill Street, Los Angeles, California 90012

7336 003 030
CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

ELECTRONIC FUND TRANSFER NUMBER
ID#:19 7336 003 030 7 YR:06 SEQ:0103

IN ADDITION TO THIS BILL OUR
RECORDS INDICATE THAT THERE ARE
OTHER TAXES DUE ON THIS PROPERTY

**ASSESSOR'S ID. NO.**

| Map Book | Page | Parcel | Year | Seq. No. | | 1ST INSTALLMENT 10% Penalty After | 2ND INSTALLMENT 10% Penalty + $10.00 Cost After | | TOTAL TAX Penalties Apply When Shown |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 12 10 10 | 04 10 11 | | |
| | | | | | TAX | 28615 48 | 28615 47 | | 57230 95 |
| | | | | | PENALTY | 2861 54 | 00 | | 2861 54 |
| | | | | | TOTAL | 31477 02 | 28615 47 | | 60092 49 |
| | | | | | NET PD/REF | | 00 | | 00 |
| | | | | | DUE | 31477 02 | 28615 47 | | 60092 49 |

| ROLL YEAR | CURRENT ASSESSED VALUE | PRIOR ASSESSED VALUE | TAXABLE VALUE |
|---|---|---|---|
| LAND | 19947000 | 7927484 | 12019516 |
| IMPROVEMENTS | | | |
| FIXTURES | | | |

ANY RETURNED PAYMENT MAY BE
SUBJECT TO A FEE UP TO $50.00.

YOUR CANCELLED CHECK OR
CONFIRMATION NUMBER IS YOUR RECEIPT

KEEP THIS UPPER PORTION
FOR YOUR RECORDS

AUTH. NO.: 000000 AA

PRINT DATE: 03 03 11

| | |
|---|---|
| TOTAL | 12019516 |
| LESS EXEMPTION | |
| NET TAXABLE VALUE | 12019516 |

SUPPLEMENTAL    PRIOR DELINQUENCY

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

000000 AA

PAY THIS
AMOUNT BY:    04 10 11

USE THESE NUMBERS ON ALL CHECKS
AND CORRESPONDENCE

**ASSESSOR'S ID. NO.**

| Map Book | Page | Parcel | Year | Seq. No. | Pay Key |
|---|---|---|---|---|---|
| | | | | | 2 |

| 2ND INSTALLMENT | INDICATE AMOUNT PAID |
|---|---|
| 28615 47 | |

03892

If not paid by
add penalty and cost    04 10 11
of
to 2nd Installment 2871 54

for a total of: 31487 01
CRT: R#14
E538947

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA   90054-0018

1100601037336003030002861547000314870189220411

**2**

## DETACH AND MAIL THIS STUB WITH 2ND INSTALLMENT PAYMENT

SUPPLEMENTAL    PRIOR DELINQUENCY

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

000000 AA

PAY THIS
AMOUNT BY:    12 10 10

USE THESE NUMBERS ON ALL CHECKS
AND CORRESPONDENCE

**ASSESSOR'S ID. NO.**

| Map Book | Page | Parcel | Year | Seq. No. | Pay Key |
|---|---|---|---|---|---|
| | | | | | 1 |

| 1ST INSTALLMENT | INDICATE AMOUNT PAID |
|---|---|
| 31477 02 | |

63855

If not paid by
add penalty and cost
of
to 1st Installment

for a total of
CRT: R#14
E538947

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA   90054-0018

9960601037336003030000314770200031477028551999

**1**

X

Exhibit 2                                      Page 40

## DETACH AND MAIL THIS STUB WITH 1ST INSTALLMENT PAYMENT

76S983 (REV. 02/2010)



# SUBSTITUTE SECURED PROPERTY TAX BILL

### JULY 1, 2007 TO JUNE 30, 2008

CRT: R#14
E538947

PLEASE MAKE CHECK PAYABLE TO:
**LOS ANGELES COUNTY TAX COLLECTOR**
225 North Hill Street, Los Angeles, California 90012

7336 003 030
CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

ELECTRONIC FUND TRANSFER NUMBER
ID#:19 7336 003 030 7 YR:07 SEQ:0102

IN ADDITION TO THIS BILL OUR
RECORDS INDICATE THAT THERE ARE
OTHER TAXES DUE ON THIS PROPERTY

| ASSESSOR'S ID. NO. | | | | | 1ST INSTALLMENT 10% Penalty After 12 10 10 | 2ND INSTALLMENT 10% Penalty + $10.00 Cost After 04 10 11 | TOTAL TAX Penalties Apply When Shown |
|---|---|---|---|---|---|---|---|
| Map Book | Page | Parcel | Year | Seq. No. | | | |
| TAX | | | | | 67233 36 | 67233 35 | 134466 71 |
| PENALTY | | | | | 6723 33 | 00 | 6723 33 |
| TOTAL | | | | | 73956 69 | 67233 35 | 141190 04 |
| NET PD/REF | | | | | 00 | 00 | 00 |
| DUE | | | | | 73956 69 | 67233 35 | 141190 04 |

| ROLL YEAR | CURRENT ASSESSED VALUE | PRIOR ASSESSED VALUE | TAXABLE VALUE |
|---|---|---|---|
| LAND | 19947000 | 8086033 | 11860967 |
| IMPROVEMENTS | | | |
| FIXTURES | | | |
| | | | |
| | | | |
| TOTAL | | | 11860967 |
| LESS EXEMPTION | | | |
| NET TAXABLE VALUE | | | 11860967 |

ANY RETURNED PAYMENT MAY BE
SUBJECT TO A FEE UP TO $50.00.

YOUR CANCELLED CHECK OR
CONFIRMATION NUMBER IS YOUR RECEIPT

KEEP THIS UPPER PORTION
FOR YOUR RECORDS

AUTH. NO.: 000000 AA
PRINT DATE: 03 03 11

SUPPLEMENTAL   PRIOR DELINQUENCY

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

000000 AA   PAY THIS AMOUNT BY: 04 10 11

If not paid by add penalty and cost   04 10 11
of to 2nd Installment 6733 33

for a total of: 73966 68
CRT: R#14
E538947



USE THESE NUMBERS ON ALL CHECKS AND CORRESPONDENCE

| ASSESSOR'S ID. NO | | | | | Pay Key |
|---|---|---|---|---|---|
| Map Book | Page | Parcel | Year | Seq. No. | 2 |
| 2ND INSTALLMENT | | | INDICATE AMOUNT PAID | | |
| 67233 35 | | | | | |

02834

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

11007010273360030300006723335000739666883420411

**2**

### DETACH AND MAIL THIS STUB WITH 2ND INSTALLMENT PAYMENT

SUPPLEMENTAL   PRIOR DELINQUENCY

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

000000 AA   PAY THIS AMOUNT BY: 12 10 10

If not paid by add penalty and cost
of to 1st Installment

for a total of:
CRT: R#14
E538947



USE THESE NUMBERS ON ALL CHECKS AND CORRESPONDENCE

| ASSESSOR'S ID. NO. | | | | | Pay Key |
|---|---|---|---|---|---|
| Map Book | Page | Parcel | Year | Seq. No. | 1 |
| 1ST INSTALLMENT | | | INDICATE AMOUNT PAID | | |
| 73956 69 | | | | | |

62877

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

99607010273360030300007395669000739566987719999

**1**

X

765983 (REV 02/2010)

Exhibit 2   Page 41

### DETACH AND MAIL THIS STUB WITH 1ST INSTALLMENT PAYMENT

# SUBSTITUTE SECURED PROPERTY TAX BILL

### JULY 1, 2010 TO JUNE 30, 2011

PLEASE MAKE CHECK PAYABLE TO:
**LOS ANGELES COUNTY TAX COLLECTOR**
225 North Hill Street, Los Angeles, California 90012

CRT: R#14
E538947

7336 003 030
CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

ELECTRONIC FUND TRANSFER NUMBER
ID#:19 7336 003 030 7 YR:10 SEQ:0008

IN ADDITION TO THIS BILL OUR
RECORDS INDICATE THAT THERE ARE
OTHER TAXES DUE ON THIS PROPERTY

| ASSESSOR'S I.D. NO. | | | | | 1ST INSTALLMENT 10% Penalty After 12 10 10 | 2ND INSTALLMENT 10% Penalty + $10.00 Cost After 04 10 11 | TOTAL TAX Penalties Apply When Shown |
|---|---|---|---|---|---|---|---|
| Map Book | Page | Parcel | Year | Seq. No. | | | |
| TAX | | | | | 100726 29 | 100726 27 | 201452 56 |
| PENALTY | | | | | | | |
| TOTAL | | | | | | | |
| NET PD/REF | | | | | | | |
| DUE | | | | | | | |

| ROLL YEAR | CURRENT ASSESSED VALUE | PRIOR ASSESSED VALUE | TAXABLE VALUE |
|---|---|---|---|
| LAND | 16207000 | | 16207000 |
| IMPROVEMENTS | | | |
| FIXTURES | | | |

ANY RETURNED PAYMENT MAY BE
SUBJECT TO A FEE UP TO $50.00.

AUTH. NO.: 000001 LD

| | TOTAL | 16207000 |
|---|---|---|
| | LESS EXEMPTION | |

PRINT DATE: 03 03 11

| NET TAXABLE VALUE | 16207000 |
|---|---|

YOUR CANCELLED CHECK OR
CONFIRMATION NUMBER IS YOUR RECEIPT

KEEP THIS UPPER PORTION
FOR YOUR RECORDS

ADJUSTED        PRIOR DELINQUENCY

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

000001 LD      PAY THIS
               AMOUNT BY:    04 10 11



If not paid by
add penalty and cost        04 10 11
of
to 2nd Installment  10082 62

for a total of 110808 89

CRT: R#14
E538947

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA  90054-0018

**2**    1101000087336003030001007262700110808986120411

## DETACH AND MAIL THIS STUB WITH 2ND INSTALLMENT PAYMENT

ADJUSTED        PRIOR DELINQUENCY

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

000001 LD      PAY THIS
               AMOUNT BY:    03 31 11



If not paid by
add penalty and cost        03 31 11
of
to 1st Installment  10072 62

for a total of 110798 91

CRT: R#14
E538947

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA  90054-0018

**1**  x    1171000087336003030001007262900110798986110331

765983  (REV 02/2010)

## DETACH AND MAIL THIS STUB WITH 1ST INSTALLMENT PAYMENT

Exhibit 2        Page 42

# LOS ANGELES COUNTY TAX COLLECTOR
225 NORTH HILL STREET, LOS ANGELES, CA 90012
## STATEMENT OF PRIOR YEAR TAXES
AS OF 03/03/11

CRT: R#14
E538947

### PARCEL INFORMATION

ASSESSOR'S ID# **7336 003 030**    YRSEQ    AIN

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

### SPECIAL INFORMATION

TAX DEFAULTED IN 2003 FOR UNPAID TAXES AND NOW
DEEMED 'SUBJECT TO POWER TO SELL'. SALE 2010A,
ITEM 03845.

DESCRIPTION
*TR=PARCEL MAP AS PER BK 62 P 68 OF PM    LOT    4

| ASSESSOR'S ID NO | YRSEQ | D/O YR | TAX AMOUNT ORIGINAL | BALANCE | PENALTY & COST ORIGINAL | BALANCE | REDEMPTION PENALTY | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 7336 003 030 | 02000 | 03 | 57789.58 | 57789.58 | 5788.95 | .00 | 79749.61 | 143328.14 |
| 7336 003 030 | 02010 | 04 | 20012.82 | 20012.82 | 2011.28 | .00 | 24015.38 | 46039.48 |
| 7336 003 030 | 03000 | 04 | 85710.76 | 85710.76 | 8581.06 | .00 | 102852.90 | 197144.72 |
| 7336 003 030 | 04000 | 05 | 89038.34 | 89038.34 | 8913.82 | .00 | 90819.09 | 188771.25 |
| 7336 003 030 | 05000 | 06 | 87799.10 | 87799.10 | 8789.90 | .00 | 73751.23 | 170340.23 |
| DETAIL CONTINUED ON NEXT PAGE | | | | | | | | |
| | TOTAL | | 632243.38 | | 63304.27 | | 461818.34 | 1157365.99 |

REDEMPTION FEE:                    15.00
STPTS FEES:                       975.00
                               1158355.99
PAYMENTS:                      <104201.48>**
AMOUNT TO PAY:                  1054154.51*

*ADD $9483.65 PENALTY PER MONTH, FROM 04/11, IF NOT PAID BY 04/02/11.

** REGULAR PAYMENT(S)

| PAYMENT DATE | COMPUTE DATE | TOTAL AMOUNT PAID | RED/STP FEE PD | PENALTY & COST PAID | REDEMPTION PENALTY PAID | TAX PAID |
|---|---|---|---|---|---|---|
| 02/23/07 | 01/07 | 104201.48 | 990.00 | 63304.27 | 39907.21 | .00 |

SUBJECT TO POWER TO SELL FEES
TITLE SEARCH FEE:                 95.00
RECORDING FEE:                    27.00
PUBLICATION COSTS:                58.00
NOTIFICATION COSTS:              645.00
STATE/COUNTY/CITY FEES:          150.00
                              -----------
                                 975.00

ANY RETURNED PAYMENT MAYBE SUBJECT TO A FEE UP TO $50.00.
KEEP THIS UPPER PORTION OF THE BILL FOR YOUR RECORDS. YOUR CANCELLED CHECK OR CONFIRMATION NUMBER IS YOUR RECEIPT.

DETACH AND MAIL THIS STUB WITH YOUR PAYMENT    STATEMENT OF PRIOR YEAR TAXES

**PLEASE SEE**

**REVERSE FOR**

**PERTINENT**

**INFORMATION**

CRT: R#14
E538947

CARSON VALLEY LLC
7 ARGONAUT
ALISO VIEJO CA 92656-1423

MUST BE RECEIVED BY:  04/02/11
COMP DTE 1103 TAX DEF 2003
LOAN ID:_____

MAKE PAYMENT PAYABLE TO:
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your check.

| YR SEQ | MPBK PGE PCL | PK | TYPE | AK | DSEQ |
|---|---|---|---|---|---|
| 00 000 | 7336 003 030 | 7 | 2 | 0 | 000 |

TOTAL DUE          INDICATE AMOUNT PAID

1054154.51

3881

LOS ANGELES COUNTY TAX COLLECTOR
P. O. BOX 54088
LOS ANGELES, CA  90054-0088

0000070003733600303080105415451820110402110031

Exhibit 2                                        Page 43

# LOS ANGELES COUNTY TAX COLLECTOR
225 NORTH HILL STREET, LOS ANGELES, CA 90012
## STATEMENT OF PRIOR YEAR TAXES
AS OF 03/03/11

CRT: R#14
E538947

PARCEL INFORMATION                                    SPECIAL INFORMATION

ASSESSOR'S ID# **7336 003 030**   YRSEO      AIN

DESCRIPTION

| ASSESSOR'S ID NO | YRSEQ | D/O YR | TAX AMOUNT ORIGINAL | TAX AMOUNT BALANCE | PENALTY & COST ORIGINAL | PENALTY & COST BALANCE | REDEMPTION PENALTY | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 7336 003 030 | 07000 | 08 | 93843.85 | 93843.85 | 9394.38 | .00 | 46452.70 | 149690.93 |
| 7336 003 030 | 08000 | 09 | 96893.52 | 96893.52 | 9699.34 | .00 | 30521.45 | 137114.31 |
| 7336 003 030 | 09000 | 10 | 101155.41 | 101155.41 | 10125.54 | .00 | 13655.98 | 124936.93 |

SEE PAGE ONE FOR TOTALS

ANY RETURNED PAYMENT MAYBE SUBJECT TO A FEE UP TO $50.00.
KEEP THIS UPPER PORTION OF THE BILL FOR YOUR RECORDS. YOUR CANCELLED CHECK OR CONFIRMATION NUMBER IS YOUR RECEIPT.

DETACH AND MAIL THIS STUB WITH YOUR PAYMENT

**PLEASE SEE**

**REVERSE FOR**

**PERTINENT**

**INFORMATION**

YR SEQ  MPBK PGE PCL   PK  TYPE  AK  DSEQ

MAKE PAYMENT PAYABLE TO:        DO NOT USE THIS STUB

Exhibit 2                                    Page 44

# CLAIM ATTACHMENT SHEET

This claim is a secured tax secured by a statutory lien under California state law. This claim is secured under 11 U.S.C. Section 506(b).

This claim is subject to interest under California Revenue and Taxation Code Section 4103, 11 U.S.C. Section 506 (b) and 11 U.S.C. Section 511 as well as costs, fee and attorney fees.

The claim will continue to increase and interest will continue to accrue until it is paid.

Taxes for 2011-2012 are hereby included in this claim due to statutory lien date of January 1st per the California Revenue and Taxation Code Section 2192. The amount of taxes is to be determined.

Exhibit 2                                                                 Page 45

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18101 Von Karman, Suite 510, Irvine, CA 92612.

The foregoing document described as **DEBTOR AND DEBTOR-IN-POSSESSION'S NOTICE OF MOTION AND  MOTION FOR ORDER APPROVING: (1) SALE OF REAL PROPERTY (14.33 ACRE PARCEL OF LAND, CARSON, CA, LOS ANGELES COUNTY APN 7336003030) FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. SECTION 363 (B), (F) AND (M); (2) $100,000 COMPENSATION OF SELLER'S REAL ESTATE AGENT; AND (3) DISTRIBUTION OF SALE PROCEEDS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAN J. HARKEY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 1, 2011 checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY** ~~U.S. MAIL OR OVERNIGHT MAIL~~(indicate method for each person or entity served)**:**
On June 1, 2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY,** ~~FACSIMILE TRANSMISSION OR EMAIL~~ (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 1, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*

- The Honorable Theodor C. Albert, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐ Service information continued on attached page.
I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 1, 2011 | Kerry A. Murphy | /s/Kerry A. Murphy |
|---|---|---|
| Date | Typed name | Signature |

1

**II. SERVED BY U.S. MAIL**

| | | |
|---|---|---|
| Jeffrey S Benice<br>Law Offices of Jeffrey S Benice<br>650 Town Center Dr Ste 1300<br>Costa Mesa, CA 92626 | The Law Offices Of Jeffrey S Benice<br>3080 Bristol St 6th Fl Ste 630<br>Costa Mesa, CA 92626 | Water Quality Control Board<br>Los Angeles Region<br>320 W 4th St  #200<br>Los Angeles, CA 90013-2343 |
| Dept. of Toxic Substance Control<br>Cypress Regional Office<br>5796 Corporate Ave<br>Cypress, CA 90630-4732 | Independent Electric Supply Inc<br>Lore Gamez Dawes– Branch Mgr<br>329 W Torrance Blvd<br>Carson, CA 89645-1120 | Rosana Miramontes Esq<br>Deputy Attorney General of California<br>300 South Spring Street #1702<br>Los Angeles, CA 90013 |
| Donald Robinson, Supervising Deputy Attorney General<br>California Department of Justice<br>300 South Spring Street #1702<br>Los Angeles, CA 90013 | Aaron Hicks<br>LA County Tax Assessor<br>Kenneth Hahn Hall of Admin.<br>500 W Temple Street Room 428<br>Los Angeles, CA 90012 | Ms. Dana Hawkins<br>LA County Tax Assessor<br>South District Office<br>1401 E Willow Street<br>Signal Hill, CA 90755 |
| Economic Development General Mgr<br>City of Carson<br>1 Civic Plaza Dr Ste 200<br>Carson, CA 90745 | Los Angeles County Treasurer and Tax Collector<br>Attn: Man-Ling Kuo<br>PO Box 54110<br>Los Angeles, CA 90054-0110 | |